JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant L.T. Scott ("Scott") appeals the trial court's decision denying his motion to suppress. We find no merit to this appeal and affirm.
 {¶ 2} The instant appeal stems from Scott's indictment for two counts of drug possession.[1] Scott filed a motion to suppress, claiming the crack pipe found on him was inadmissible because it was confiscated pursuant to an illegal search and seizure. The following evidence was presented at the hearing on the motion.
 {¶ 3} Cleveland Police Officer Robert Albertini testified that on March 6, 2001, at approximately 1:40 a.m., he and his partner were on basic patrol in the neighborhood of Union Avenue and East 116th
Street. He observed a vehicle drive south on East 114th Street and turn left on Union Avenue without using a signal. He activated the police siren and lights and pulled over the vehicle. The passenger in the vehicle, L.T. Scott, "quickly got out of the car and started walking back" toward the officers. Despite the officers' order for Scott to return to the vehicle, he refused and stated, "I am not getting back in the car. I don't even know that guy." Officer Albertini placed Scott against the patrol car and performed a weapons pat-down, which revealed a metal crack pipe in Scott's rear pocket.
 {¶ 4} Officer Albertini further testified that the area is well-known for drug activity and that he made or assisted in over 130 drug-related arrests during the 15 months he was assigned to the area. He also stated that the weapons pat-down was a necessary precaution to protect the officers, especially given Scott's refusal to return to the vehicle.
 {¶ 5} After the court denied Scott's motion to suppress, he pled no contest to both counts of drug possession, and the court imposed concurrent sentences of six months on each count.
 {¶ 6} Scott appeals, raising one assignment of error.
 Motion to Suppress {¶ 7} In his sole assignment of error, Scott argues that the trial court erred by failing to grant his motion to suppress because the evidence was the product of an unlawful search and seizure. We disagree.
 {¶ 8} In reviewing a trial court's ruling on a motion to suppress, a reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275, 277; State v. Fanning
(1982), 1 Ohio St.3d 19, 20. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See, Statev. Curry (1994), 95 Ohio App.3d 93, 96, citing, State v. Schiebel
(1990), 55 Ohio St.3d 71. However, without deference to the trial court's conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. Id., citing, Statev. Claytor (1993), 85 Ohio App.3d 623, 627.
 {¶ 9} In the seminal case of Terry v. Ohio, the United States Supreme Court explained that the Fourth Amendment allows a police officer to stop and detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." Terry v. Ohio (1968), 392 U.S. 1, 9; see, also,State v. Andrews (1991), 57 Ohio St.3d 86. To justify an investigative stop, the officer must be able to articulate specific facts which would warrant a reasonably prudent police officer to believe that the person stopped has committed or is committing a crime. See, Terry, supra, at 27.
 {¶ 10} A valid investigative stop must be based upon more than a mere "hunch" that criminal activity is afoot. United States v. Arvizu
(2002), 534 U.S. 266; Terry, supra, at 27. However, reviewing courts should not "demand scientific certainty" from law enforcement officers.Illinois v. Wardlow (2000), 528 U.S. 119, 125. In deciding whether reasonable suspicion exists, courts must examine the "`totality of the circumstances' of each case to determine whether the detaining officer has a `particularized and objective basis' for suspecting legal wrongdoing." Arvizu, supra, quoting, United States v. Cortez (1981),449 U.S. 411, 417-418; State v. Bobo (1988), 37 Ohio St.3d 177, at syllabus, paragraph one, citing, State v. Freeman (1980),64 Ohio St.2d 291.
 {¶ 11} Under this totality of the circumstances approach, police officers are permitted to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that `might well elude an untrained person.'" Arvizu, quoting, Cortez, 449 U.S. at 418. Thus, a court reviewing the officer's reasonable suspicion determination must give due weight to the officer's trained eye and experience and view the evidence through the eyes of those in law enforcement. Id. See, also, State v.Andrews (1991), 57 Ohio St.3d 86, 87-88.
 {¶ 12} Scott contends that the State failed to set forth any facts justifying the investigatory stop and that there are no objective facts in the record demonstrating a reasonable suspicion of criminal activity. Scott further argues that the fact that the neighborhood is a high-crime area and known for drug activity is "wholly irrelevant." Moreover, he asserts that his action of retreating from the police, even in an area of high drug activity, does not justify an investigative stop.
 {¶ 13} Contrary to Scott's assertions, we find that based on the totality of the circumstances, the officers had a reasonable suspicion of criminal activity and, moreover, that a protective search was warranted. Here, it is undisputed that the initial stop of the vehicle was lawful. After the police pulled over the vehicle, Scott's quick exit from the vehicle combined with his refusal to obey the officers' orders to return to the vehicle, his admission of not knowing the driver, and the time and day of the week, invoked reasonable suspicion of possible criminal activity. In contrast to Scott's argument, an area known for drug or criminal activity is a relevant circumstance to consider for purposes of conducting a Terry stop and frisk. See, State v. Bostick, Cuyahoga App. No. 81900, 2003-Ohio-3252.
 {¶ 14} Additionally, Scott's reliance on State v. Fanning (1990),70 Ohio App.3d 648, for the proposition that his retreating from the police did not warrant an investigatory stop is misplaced. In Fanning, the police decided to stop and ask the defendant questions after observing him standing outside a bar with other men in a high crime area. Id. While the police were approaching Fanning, he walked away briskly. Id. at 650. On the basis of Fanning's retreat, the police conducted an investigatory stop and discovered drugs in his wallet. Id. This court found that the investigatory stop was not warranted because at the moment the police decided to stop Fanning, he had exhibited "nothing but innocuous behavior." In the instant case, Scott engaged in suspicious activity prior to the investigatory stop. Additionally, Scott was not merely standing on the sidewalk when approached by the police. Rather, the officers were conducting a traffic stop when Scott abruptly exited the vehicle and refused their order to return to the vehicle.
 {¶ 15} We also find that Officer Albertini's subsequent pat-down for weapons was reasonable. Officer Albertini testified as to the extremely dangerous nature of traffic stops, especially when a person exits the vehicle. Scott's refusal to return to the vehicle combined with his walking toward the officers, provided a reasonable basis for frisking Scott. Terry, supra, at 19. Because Officer Albertini conducted a lawfulTerry search, the evidence of the crack pipe was properly admitted into evidence. Michigan v. Long (1983), 463 U.S. 1032, 1050, citing, Coolidgev. New Hampshire (1971), 403 U.S. 443.
 {¶ 16} Scott's sole assignment of error is overruled.
Judgment affirmed.
SEAN C. GALLAGHER, J. and ANTHONY O. CALABRESE, JR., J. CONCUR.
[1] Although this is a consolidated appeal of case numbers CR-407487 and CR-432229, Scott fails to raise any assignments of error pertaining to CR-432229, in which he pled guilty to unauthorized use of a motor vehicle. As a result, this opinion addresses only the facts and issues pertaining to CR-407487.