OPINION
{¶ 1} George A. Lattimore, defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court found him guilty of possession of cocaine, in violation of R.C. 2925.11, a fifth-degree felony.
 {¶ 2} On March 22, 2002, Columbus police officers Ralph Jarrell and Michael Bruce were observing a residence from which they suspected crack cocaine was being sold. Officer Bruce was observing the house with binoculars while Officer Jarrell sat in the police cruiser. Officer Bruce saw appellant and a passenger drive up to the residence. Appellant entered the residence and then returned to his car approximately one minute later. Appellant drove away, and Officers Jarrell and Bruce followed him in their cruiser. One of the officers checked appellant's license plates and discovered his tags were expired. Officer Jarrell activated the overhead lights and pulled over appellant's vehicle.
 {¶ 3} Officer Jarrell testified at the motion to suppress hearing that he approached appellant's vehicle and asked appellant for his driver's license. Officer Bruce approached the passenger's side, and Officer Jarrell asked appellant to step out of the vehicle. He told appellant that he stopped him because of the expired tags and for investigation of possession of crack cocaine because he had come out of a known crack house. Officer Jarrell testified that he asked appellant for consent to search him, and appellant consented. However, appellant testified that Officer Jarrell never asked his consent to search him, and he never gave consent. Officer Jarrell then searched appellant's pockets and found what he later field tested to be crack cocaine in appellant's front coat pocket.
 {¶ 4} Appellant was charged with one count of possession of cocaine. On August 7, 2002, appellant filed a motion to suppress the evidence with regard to the crack cocaine. On February 25, 2003, a hearing on the motion to suppress was held, after which the trial court denied the motion to suppress. On February 27, 2003, appellant entered a plea of no contest to the charge. On April 30, 2003, the trial court entered a judgment finding appellant guilty and sentencing him to three years of community control with intensive supervision. Appellant appeals the trial court's judgment denying his motion to suppress evidence, asserting the following assignment of error:
The trial court erred when it overruled the defendant's motion to suppress evidence obtained as a result of an unlawful seizure of the defendant and without the voluntary consent of the defendant.
 {¶ 5} Appellant argues in his assignment of error that the trial court erred in overruling his motion to suppress evidence obtained pursuant to an unlawful seizure and involuntary consent. The standard of review with respect to a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. State v. Klein (1991), 73 Ohio App.3d 486, 488. Such a standard of review is appropriate as "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Venham (1994), 96 Ohio App.3d 649, 653. An appellate court must accept the trial court's factual findings and the trial court's assessment of witness credibility. Id. Accepting those facts as true, an appellate court must independently determine, as a matter of law, without deference to the trial court's conclusion, whether the facts meet the applicable legal standard. State v. Williams (1993),86 Ohio App.3d 37, 41.
 {¶ 6} We will first address the factual issue of whether appellant gave consent to be searched. Officer Jarrell testified that appellant gave consent to search him. Appellant denied on both direct and cross-examination that he ever gave consent or had been asked whether he would consent to be searched. Believing appellant had testified during direct examination that he had given consent but then denied such upon cross-examination, the trial court asked appellant for clarification of his consent during cross-examination. Appellant told the trial court that he never testified during direct examination that he gave consent. During closing argument, the prosecution stated that appellant had changed his story several times as to whether he gave Officer Jarrell consent. The trial court then found in its oral ruling that appellant's testimony was inconsistent, in that appellant testified on direct examination that he gave consent but denied it on cross-examination.
 {¶ 7} Our review of the record reveals that the trial court and the state were mistaken in their recollection of appellant's testimony. Appellant at no time specifically testified that he gave consent to be searched. However, we do note that our review of the transcript does indicate appellant's testimony during direct examination was somewhat imprecise on this issue:
Q. He never asked for permission?
A. No, no, not like that, no.
Q. Not like that?
A. I wouldn't have gave [sic] him permission to check if I had stuff on me anyway.
Q. I'm asking you did he outright ask you for consent to search you?
A. No. He basically was saying, you know, he said — the way he said it was like it was a scary, you know, I was scared and he just checked me.
* * *
Q. Did you feel like you could say no to him?
A. Did I feel that?
Q. Yeah.
A. At the time I wasn't thinking. I really wasn't thinking.
Q. But he didn't ask for consent?
A. Huh?
Q. He didn't ask you to go into your pocket?
A. No, he did not ask to check my pockets. I did not give him permission to check me like that. I game [sic] him my license.
 {¶ 8} Nevertheless, despite the trial court's mistaken recollection as to appellant's testimony, the court did specifically find Officer Jarrell's testimony credible that he asked for and received consent to search appellant. This was a factual issue best suited for the trier of fact. In this case, the trial court was in the best position to evaluate the credibility of the witnesses, and it apparently found appellant not credible and Officer Jarrell credible on this subject. Therefore, we will not disturb the trial court's ruling that appellant gave consent to be searched. However, even if we were to review the issue of appellant's consent de novo because of the trial court's mistaken belief as to appellant's testimony, as appellant urges this court to do, our review of the trial transcript reveals no reason to doubt the credibility of Officer Jarrell, and appellant's imprecise testimony would tend to detract from his credibility.
 {¶ 9} Having determined that the trial court did not err in finding appellant consented to be searched, we must next determine whether all of the surrounding circumstances and procedures used by the police in gaining that consent were consistent with appellant's constitutional rights. It is well-established a defendant waives his or herFourth Amendment protection by consenting to a warrantless search. State v.Barnes (1986), 25 Ohio St.3d 203, 208, citing Davis v. United States
(1946), 328 U.S. 582, 66 S.Ct. 1256; Schneckloth v. Bustamonte (1973),412 U.S. 218, 93 S.Ct. 2041; and State v. Pi Kappa Alpha Fraternity
(1986), 23 Ohio St.3d 141. "The standard of proof to show a waiver ofFourth Amendment rights is less strict than that required to demonstrate a waiver of Fifth or Sixth Amendment rights. It need not be shown that there has been a knowing and intelligent waiver. Rather, the court must examine the totality of the circumstances to determine the voluntariness of consent." Barnes, supra, at 208-209, citing Schneckloth, supra, andUnited States v. Mendenhall (1980), 446 U.S. 544, 100 S.Ct. 1870. Further, "[v]oluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search."State v. Robinette (1997), 80 Ohio St.3d 234, 241, citing Davis, supra, at 593-594. The voluntariness of a consent to a search is a question of fact and will not be reversed on appeal unless clearly erroneous. Statev. Clelland (1992), 83 Ohio App.3d 474.
 {¶ 10} In the present case, the trial court never made any determination as to the voluntariness of appellant's consent. Therefore, we can give no deference to any finding in this regard. Nevertheless, our own review of the record and applicable case law convinces us that the trial court did not err in denying appellant's motion to suppress. Appellant presents several interrelated arguments as to why his consent to search was invalid. Appellant initially argues that the mere fact he was observed going into a known crack house did not provide grounds to pull him over and detain him. However, we find the officers stop of appellant's vehicle and subsequent detainment was valid. Although the officers suspected appellant had purchased drugs at the known crack house he had just exited, they testified that they actually stopped appellant's vehicle for a traffic violation, specifically expired tags. Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred, or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution, even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.Dayton v. Erickson (1996), 76 Ohio St.3d 3, syllabus; see, also, Whrenv. United States (1996), 517 U.S. 806, 812, 116 S.Ct. 1769 (an ulterior motive does not vitiate legal justification); State v. Featherstone,150 Ohio App.3d 24, 2002-Ohio-6028, at ¶ 14, citing Arkansas v.Sullivan (2001), 532 U.S. 769, 771, 121 S.Ct. 1876; Whren; and Erickson.
Further, after making an investigative traffic stop, an officer may then detain a motorist for a period of time sufficient to run a computer check and to issue him a warning or a citation. Delaware v. Prouse (1979),440 U.S. 648, 659, 99 S.Ct. 1391; State v. Carlson (1995),102 Ohio App.3d 585, 657.
 {¶ 11} In the present case, believing the officers' testimony that appellant was stopped because of a traffic violation, the trial court properly determined that the police validly stopped appellant. Thus, even though the officers may have also desired to investigate appellant's involvement in drug activity, their stop of appellant's vehicle was reasonable because they had probable cause that appellant's vehicle had expired tags. See Erickson, supra. Further, after validly stopping appellant for expiration of his tags, the police officers could then lawfully detain him long enough to run a computer check on his license and issue a citation. See Prouse and Carlson, supra. Therefore, this argument is without merit.
 {¶ 12} Appellant next claims that the officers' search was outside the scope of the original detention for the expired tags violation, and the police began an impermissible "fishing expedition" when they sought his consent to search him without a reasonable, articulable suspicion of further criminal activity other than the expired tag violation. It is well-established that reasonable suspicion that a detainee is engaged in criminal activity must exist for as long as the detention does. State v.Bevan (1992), 80 Ohio App.3d 126, 130. Further, the lawfulness of the initial stop will not support a "fishing expedition" for evidence of a crime. Id. However, when a consent to search is obtained within the period of time required to process a traffic citation, the search is not required to be supported by a reasonable articulable suspicion of criminal behavior other than the traffic infraction. See State v.Loffer, Montgomery App. No. 19594, 2003-Ohio-4980 (consent to search is valid when it is obtained during the period of time reasonably necessary to process a traffic citation); State v. Martina (Dec. 28, 2001), Montgomery App. No. 18905 (search was not outside the scope of the detention when consent to search a vehicle was obtained during the period of time reasonably necessary to process a traffic citation); State v.Swope (Nov. 9, 1994), Miami App. No. 93-CA-46; see, also, United Statesv. Roberson (C.A. 5, 1993), 6 F.3d 1088, 1092-1093 (consent to search was validly obtained during the lawful detention of occupants by the officer conducting an investigative stop for changing lanes without a signal).
 {¶ 13} In the present case, Officer Jarrell testified that, after pulling over appellant's vehicle, he asked appellant for his driver's license, asked appellant to step out of the vehicle, and told appellant he stopped him because he had an expired tag and had just left a known crack house. Officer Jarrell testified that he informed appellant he was going to be issued a citation for the expired tags. Officer Jarrell said that he then asked appellant for consent to search his person. Officers Bruce and Jarrell testified appellant was not free to leave at that point because they were in the midst of issuing appellant a citation for the expired tags. Thus, Officer Jarrell's request for consent and search occurred during a lawful stop and did not go beyond the period necessary to effectuate the stop and issue a citation for expired tags. Officer Jarrell was still in the process of issuing appellant the citation for the expired tags when he asked for consent, and he did not unnecessarily prolong appellant's detainment in order to gain such consent. SeeRoberson, supra (routine questioning and request for consent to search during lawful detention for a traffic violation did not prolong the duration of initial, valid detention). Therefore, appellant's consent was validly obtained in this respect.
 {¶ 14} Appellant further asserts that his consent was involuntary. When a person is lawfully detained by police and consents to a search, the state must show by clear and convincing evidence that the consent was freely and voluntarily given. Florida v. Royer (1983), 460 U.S. 491,497, 103 S.Ct. 1319; State v. Pierce (1998), 125 Ohio App.3d 592, 598. Important factors in determining the voluntariness of consent are: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. State v. Hall (Dec. 14, 2000), Tuscarawas App. No. 2000AP030025, citing State v. Webb (Jan. 28, 2000), Montgomery App. No. 17676.
 {¶ 15} In the present case, as noted above, the officers lawfully detained appellant to issue a citation for expired tags. Officer Jarrell testified that appellant consented to the search while he was still within the period of processing the citation. This was not a situation where the consent was a mere submission to a "claim of lawful authority" and, therefore, not voluntary. See Royer, supra. Officer Jarrell claimed no lawful authority to search appellant's person. The police made no promises or threats to obtain appellant's consent to search him. SeeUnited States v. Watson (1976), 423 U.S. 411, 424, 96 S.Ct. 820 (consent defendant's own free and unconstrained choice because no overt act or threat of force). Officer Jarrell testified that he did not coerce appellant, and Officer Bruce testified he saw no indication of coercion from Officer Jarrell. Officer Jarrell simply asked appellant if he could search him, and appellant granted permission. See State v. McConnell,
Stark App. No. 2002CA00048, 2002-Ohio-5300 (that the individuals acted cooperatively and without significant delay in complying with the officer's request to search demonstrated the voluntariness of their consent). Appellant also cooperated with the officers' prior requests without any evidence of hesitation or coercion, thereby negating the possibility appellant felt any prolonged air of coercion and intimidation that extended into the period of the request for consent. See Watson,
supra, at 424 (no indication of more subtle forms of coercion that might flaw defendant's judgment).
 {¶ 16} Further, the surrounding environment did not produce coercive conditions. Appellant was not in or near the cruiser at the time of the consent. See State v. Veit (May 26, 1998), Athens App. No. 97CA34 (consent to search was involuntarily obtained under coercive circumstances when the defendant was in the back of a police cruiser, possibly in handcuffs); cf., Martina, supra (consent voluntary even though defendant was detained and seated in a police cruiser when he purportedly gave his consent). The parties were also standing on a public street when appellant gave consent. See Watson, supra, at 424 (consent to search voluntary when given while on a public street and not in the confines of the police station). Appellant was not handcuffed, and the officers did not have their guns drawn. See State v. Elam, Hancock App. No. 5-02-57, 2003-Ohio-1577, at ¶ 23 (consent to search voluntary when none of the three officers had their guns drawn, and the defendant was not handcuffed). Also, there was only a single police cruiser, there were only a total of two officers present, and the second officer was dealing with the passenger and did not interact with appellant. See State v.Moncrease (Apr. 13, 2000), Cuyahoga App. No. 76145, overruled on other grounds (the show of strength through the number of officers and their use of guns and handcuffs created a coercive environment rendering the consent to search involuntary); State v. Fuller (Sept. 27, 1989), Allen App. No. 1-88-1 (mere presence of three officers [two of whom were passive observers], during an investigatory roadside stop, did not amount to a coercive environment sufficient to invalidate consent to search). Therefore, none of these factors affected the voluntariness of appellant's consent.
 {¶ 17} In addition, that appellant was being temporarily detained for the traffic violation at the time of his consent was not enough in itself to demonstrate a coerced consent to search, given that even being in formal police custody at the time of consent is insufficient to demonstrate coercion. See Watson, supra, at 424. There is also no evidence of appellant's low intelligence or lack of education. Further, although there is no evidence of appellant's knowledge of his right to refuse, and Officer Jarrell admitted that he did not inform appellant of such, proof of knowledge of a right to refuse is not the sine qua non of an effective consent to search. See Bustamonte, supra, at 234; Watson,
supra, at 424. In sum, appellant's consent to the search demonstrates only his desire to resolve the situation, and there is no evidence of any coercive police procedure. See Martina, supra (the prospect that the defendant consented to the search demonstrates no more than a desire to resolve the difficulty in which he found himself). Viewing the totality of the circumstances, we find that there was clear and convincing evidence that appellant voluntarily consented to the search. Therefore, appellant's assignment of error is overruled.
 {¶ 18} Accordingly, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Klatt, JJ., concur.