OPINION
{¶ 1} Plaintiff-appellant, city of Columbus ("city"), appeals from a judgment of the Franklin County Municipal Court, sustaining a motion to suppress filed by defendant-appellee, Robert L. Wright.
 {¶ 2} On November 30, 2002, appellee was arrested and charged with operating a motor vehicle while under the influence of alcohol. On December 24, 2002, appellee filed a motion to suppress evidence asserting that the arresting officer lacked reasonable suspicion to detain appellee and lacked probable cause to place him under arrest. The city filed a memorandum contra appellee's motion to suppress.
 {¶ 3} The trial court conducted a hearing on the motion on March 18, 2003. At the hearing, Columbus Police Officer Bradley Wannemacher testified on behalf of the city, and gave the following account of the events of November 30, 2002.
 {¶ 4} On that date, at approximately 3:30 a.m., Officer Wannemacher and his partner, Officer Barry O'Dell, were on patrol when they received a dispatch stating that a female had reported being threatened with a gun by her ex-boyfriend. The female further reported that the ex-boyfriend was leaving her residence in a silver Geo Storm.
 {¶ 5} As the officers approached the address on Derrer Road, where the phone call had been placed, Officer Wannemacher observed a silver Geo Storm matching the description given. An individual, later identified as appellee, was driving the vehicle; according to Officer Wannemacher, the driver apparently spotted the officers and suddenly accelerated his vehicle. As the officers followed, appellee drove northbound on Demorest Avenue and then turned eastbound from Demorest Avenue to Camp Chase Drive. Appellee then proceeded eastbound on Camp Chase Drive to Letchworth Drive. According to the officers, appellee "took off at a high rate of speed away from us," and was "making quick rapid turns" as if he was "trying to avoid contact" with the officers. (Tr. 78.) After watching the driver accelerating quickly from stops, and then fail to use a turn signal, the officers stopped the vehicle. The stop occurred "[m]aybe a couple minutes" after the officers initially observed the vehicle. (Tr. 15.)
 {¶ 6} As the officers approached the vehicle, they noticed the smell of alcohol about the driver, and they requested that appellee exit the vehicle. Based upon the manner in which appellee had been driving, as well as the officers' observation of appellee's speech and the detection of an odor of alcohol, the officers asked appellee to perform three standard field sobriety tests, to which he consented. During part of the testing, appellee related that he had "three tall beers," and he stated, "I'm a disturbed little drunk." (Tr. 45.) Following the administration of the tests, the officers made a decision to arrest appellee. Appellee was transported to police headquarters and given a breath test, which registered a .200 alcohol concentration level.
 {¶ 7} By decision and entry filed on April 24, 2003, the trial court sustained appellee's motion to suppress "all evidence related to and stemming from the defendant's field sobriety test" on the basis that "there was no reasonable suspicion for the stop and the subsequent test."
 {¶ 8} On appeal, the city raises the following two assignments of error for review:
[I.] The trial court erred, as a matter of law, in concluding that the reasonable suspicion to stop the defendant's vehicle based on allegations of criminal threats dissipated upon the officer's alleged failure to effectuate an immediate stop of the same.
[II.] The trial court's findings of fact as pertains to certain factors surrounding the stop of the defendant's vehicle lacks the support of competent, credible evidence.
 {¶ 9} At the outset, "[t]he standard of review with respect to a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence." State v.Lattimore, Franklin App. No. 03AP-467, 2003-Ohio-6829, at ¶ 5. In a hearing on a motion to suppress, the trial court assumes the role of trier of fact, and because the court is in the best position to resolve questions of fact and evaluate the credibility of witnesses, a reviewing court "must accept the trial court's factual findings and the trial court's assessment of witness credibility." Id. However, while "[a]ccepting those facts as true, an appellate court must independently determine, as a matter of law, without deference to the trial court's conclusion, whether the facts meet the applicable legal standard." Id.
 {¶ 10} In State v. Williams (Aug. 30, 2001), Cuyahoga App. No. 78732, the court discussed the circumstances in which an investigatory stop is permissible, stating in relevant part:
The Fourth Amendment to the United States Constitution provides in part: the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *. The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution require the police to obtain a warrant based upon probable cause before they conduct a search. The warrant requirement, however, is subject to a number of well-established exceptions. Coolidge v. New Hampshire (1971),403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564.
In Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the United States Supreme Court held that a police officer may make a brief, warrantless, investigatory stop of an individual without probable cause where the police officer reasonably suspects that the individual is or has been involved in criminal activity. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. State v. Andrews (1991),57 Ohio St.3d 87, quoting Terry, supra, at 21.
Whether an investigatory stop is reasonable depends upon the totality of circumstances surrounding the incident. State v. Williams (1990),51 Ohio St.3d 58, 60, 554 N.E.2d 108. The propriety of an investigatory stop must be assessed in light of the totality of the circumstances as viewed through the eyes of a reasonable police officer who must confront those circumstances on the scene. Andrews, supra[,] at 87-88.
 {¶ 11} In the instant case, the trial court, in its decision granting appellee's motion to suppress, held in part:
The police [officers were] initially responding to a call involving threats and unruly behavior. The officers were given some details regarding the person for whom they were looking. They knew to look for a white male driving a silver Geo.
This information did target the investigation and prevented many other people from being subjected to an unreasonable stop and/or search. When the police arrived in the area of Deerer [sic] Road, where the call was initiated, they indeed encountered a white male driving a sliver Geo. The court would have absolutely no trouble with the stop had it taken place immediately.
* * *
However, for some unknown reason which was never explained at the hearing the officers did not immediately stop the defendant. They followed the defendant for several blocks and for subsequent turns and stops. It was only after following the defendant and watching him drive that the police initiated the stop.
If the defendant was stopped because of the alleged threats as stated above this court would have no difficulty with the stop. However if that indeed was the reason for the stop there was no reason to allow the defendant to continue driving. The stop should have been initiated as soon as the defendant was observed. * * *
* * *
To the extent that the stop was initiated because of the alleged threats the reasonableness of the same was lost after the police failed to immediately stop the defendant but chose to follow him. * * *
 {¶ 12} Under the first assignment of error, the city argues that the initial decision by the officers to stop the vehicle was supported by reasonable suspicion, and that the trial court erred in holding that the failure to effectuate an immediate stop dissipated the existence of reasonable suspicion. We agree.
 {¶ 13} As noted under the facts, the officers initially received a police radio dispatch stating that a man with a gun had threatened an individual. Under Ohio law, "a police radio broadcast is a sufficient reliable source to provide even probable cause to make a full arrest, let alone reasonable suspicion to justify an investigatory stop." State v.Ramey (1998), 129 Ohio App.3d 409, 415. Further, "an investigatory stop may be justified even though the criminal activity was not first observed by a police officer, but, rather, by a citizen who then relayed the information to the police in the form of a `tip.'" Id. at 415-416. Generally, information from an identified citizen informant is presumed reliable and credible as opposed to tips from an anonymous informant.Maumee v. Weisner (1999), 87 Ohio St.3d 295, 300. Thus, courts have held that "`[i]nformation from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable.'" Id., quoting State v. Loop
(Mar. 14, 1994), Scioto App. No. 93CA2153.
 {¶ 14} The informant in this case was the victim, and the officers receiving the dispatch were provided the informant's address. Thus, the circumstances provided the officers with sufficient information so that the identity of the informant could be ascertained. The informant described the suspect's vehicle as a silver Geo Storm. As the officers approached the victim's residence, they observed a Geo Storm leaving the area. The officers followed the vehicle and, within a "couple" of minutes, made a stop. Based upon the totality of the circumstances, including information from a citizen informant that the individual in the vehicle had just threatened the informant with a weapon, the officers had reasonable suspicion to stop and detain appellee while they investigated the report.
 {¶ 15} As indicated above, the trial court, in granting the motion to suppress, deemed significant the fact that the officers did not immediately stop appellee, but, instead, observed him driving for several minutes before pulling him over. However, even assuming, as found by the trial court, that the officers did not "immediately stop" the vehicle, we agree with the city's contention that the passage of approximately two minutes between the time the officers first observed appellee's vehicle and the time of the stop did not negate the officers' reasonable suspicion.
 {¶ 16} It has been held that "[r]easonable suspicion entails some minimal level of objective justification for making a stop — that is, something more than an inchoate and unparticularized suspicion or `hunch,' but less than the level of suspicion required for probable cause." State v. Jones (1990), 70 Ohio App.3d 554, 556-557. In determining whether reasonable suspicion exists to warrant an investigatory stop, "courts must examine the `totality of the circumstances' of each case to determine whether the detaining officer has a `particularized and objective basis' for suspecting legal wrongdoing." State v. Scott, Cuyahoga App. No. 82643, 2003-Ohio-6343, at ¶ 10. Further, "[u]nder this totality of the circumstances approach, police officers are permitted to `draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" Id., at ¶ 11.
 {¶ 17} As noted, at the time of the investigatory stop, the officers had a reasonable, articulable basis for suspecting that the driver of the vehicle had threatened an individual with a gun. While the officers would have been justified in immediately stopping the vehicle (assuming they could have done so in light of evidence that appellee accelerated quickly upon seeing the officers), we find the fact that the officers may have decided to follow appellee for a couple of minutes after initially observing his vehicle did not, as a matter of law, dispel the officers' objective, reasonable suspicion of criminal behavior, or render the tip stale. See Grafton v. Swanson (N.D. 1993), 497 N.W.2d 421,425, fn. 9 ("An officer's subjective decision not to stop a driver whom the officer suspects of committing a crime immediately upon their observation of the driver, but continues to follow the driver for some distance, is of no legal significance in determining whether the officer's stop was supported by sufficient objective facts"); UnitedStates v. Gonzalez (C.A. 5, 1999), 190 F.3d 668, 673 (staleness of tip is to be determined by the facts of each case and cannot be determined "by simply a `mechanical counting of the time between' the time the tip is received and the time the tip is used"); State v. Pallor (N.M.App. 1996), 923 P.2d 599, 603 (the fact officers did not immediately stop defendant but, instead, monitored his actions for a three-hour period did not purge the reasonable suspicion of its ripeness).
 {¶ 18} Accordingly, we conclude that the trial court erred, as a matter of law, in suppressing the evidence and dismissing the charge, and the city's first assignment of error is sustained.
 {¶ 19} Under the second assignment of error, the city asserts that the record does not support the trial court's factual finding that the officers made a decision to follow appellee rather than "immediately" stop him. More specifically, the city argues that the testimony at the suppression hearing demonstrates that the officers gave immediate chase to the vehicle when it was first observed, but that appellee led the officers through a series of quick turns as they tried to catch him. However, in light of our disposition of the first assignment of error, the issue raised under the city's second assignment of error is rendered moot.
 {¶ 20} Based upon the foregoing, the city's first assignment of error is sustained and the second assignment of error is moot. The judgment of the Franklin County Municipal Court is reversed, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this opinion.
Judgment reversed and cause remanded.
Lazarus and Klatt, JJ., concur.