OPINION
{¶ 1} Appellant, Tyshawn J. Parks, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, finding him to be delinquent as a result of violating R.C. 2925.11. Appellant assigns one error:
The trial court erred in failing to suppress evidence taken in an unlawful seizure. This decision violated the Fourth andFourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution.
Because the trial court improperly denied appellant's motion, we reverse.
 {¶ 2} On September 16, 2003, two bicycle police officers were patrolling appellant's neighborhood, known to be an area with high drug trafficking activity. Officer Richard Griggs noticed appellant, 17 years old at the time, standing with several other youths. Officer Griggs observed appellant with his left hand extended, pointing to or moving something in his palm. As the officers approached appellant to ask him a few questions, appellant put his hand in his pocket. The officers suspected appellant possessed crack cocaine.
 {¶ 3} The officers asked appellant to sit on the ground, and they inquired what appellant was doing, to which appellant responded "nothing." Officer Griggs asked appellant if he could conduct a search of appellant since appellant was not doing anything. Appellant insisted he did not do anything wrong and refused the officer permission. A few minutes later, a man believed to be appellant's father came outside. Officer Griggs told appellant's father they believed appellant possessed crack cocaine. The officers allowed appellant's father to speak to appellant in confidence on two occasions. At some point during the interaction, an officer explained to appellant that they thought they had enough evidence to obtain a search warrant. Eventually, appellant stood up and pulled out of his pocket a baggie with several rocks of crack cocaine. Appellant was not handcuffed prior to revealing the baggie.
 {¶ 4} Later that same day, a delinquency complaint for possession of crack cocaine was filed in the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. Appellant filed a motion to suppress the crack cocaine evidence, arguing that his detention and search were unlawful. The magistrate overruled the motion, adjudicated appellant a delinquent, and recommended placing him on probation for one year or until all terms and conditions of probation were complete. Appellant filed objections to the magistrate's decision, but the trial court overruled the objections and adopted the magistrate's decision.
 {¶ 5} In his single assignment of error, appellant asserts the trial court improperly denied his motion to suppress. Appellate review of a motion to suppress presents a mixed question of law and fact. State v. Burnside,100 Ohio St.3d 152,155,2003-Ohio-5372. When considering a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to evaluate the evidence, judge the credibility of witnesses, and resolve the factual issues. State v. Mills
(1992), 62 Ohio St.3d 357. Consequently, an appellate court must accept the facts as true if they are supported by competent credible evidence. Id. Accepting these facts as true, the appellate court must independently determine, without deference to the trial court, whether the facts are sufficient to meet the applicable legal standard. Burnside, supra.
 {¶ 6} The Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit unlawful governmental searches and seizures. Brown v.Texas (1979), 443 U.S. 47, 99 S.Ct. 2637. Every arrest and every seizure having the essential attributes of a formal arrest generally must be supported by probable cause. Michigan v.Summers (1981), 452 U.S. 692, 101 S.Ct. 2587. The general rule, however, has firmly established exceptions.
 {¶ 7} The United States Supreme Court recognizes three categories of police interaction with citizens: a consensual encounter, an arrest, and an investigatory detention. Florida v.Royer (1983), 460 U.S. 491, 103 S.Ct. 1319. A consensual encounter, not at issue in this case, does not implicate theFourth Amendment. On the other hand, if a police officer approaches or accosts an individual and restrains his or her freedom to walk away, the Fourth Amendment is implicated because a "seizure" has taken place. Brown, supra. The ultimate question in determining whether a seizure occurs is whether in view of all the circumstances, a reasonable person would believe he or she was not free to leave. State v. Bell, Lucas App. No. L-03-1015, 2004-Ohio-1327, quoting U.S. v. Mendenhall (1980),446 U.S. 544, 554, 100 S.Ct. 1870. In accordance with theFourth Amendment any seizure must be reasonable under the circumstances.Brown, supra.
 {¶ 8} A seizure constituting an arrest must be supported by probable cause. State v. Barker (1978), 53 Ohio St.2d 135. A seizure is an arrest when (1) the arresting person has an intent to arrest; (2) the seizure is made under real or pretended authority; (3) an actual or constructive seizure or detention occurs; and (4) the person arrested so understands it. Id.
 {¶ 9} An officer briefly may detain an individual for questioning, known as an investigatory stop or detention, if the officer reasonably suspects that the individual is engaging, or has been engaged, in criminal activity. Terry v. Ohio (1968),392 U.S. 1, 20, 88 S.Ct. 1868; State v. Andrews (1991),57 Ohio St.3d 86. To justify the detention, the officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, at 21. Reasonable suspicion entails some minimal level of objective justification for making the stop; it is something more than a hunch but less than the level of suspicion required for probable cause. State v. Jones
(1990), 70 Ohio App.3d 554, 556-557; Columbus v. Wright,
Franklin App. No. 03AP-421, 2004-Ohio-188. Even wholly lawful conduct may be sufficient to justify the suspicion that criminal activity was afoot. In re Lester, Warren App. No. CA2003-04-050, 2004-Ohio-1376.
 {¶ 10} The parties do not dispute that appellant was seized within the meaning of the Fourth Amendment. Accordingly, we must determine whether appellant was under formal arrest or subject to an investigatory detention at the time of questioning. The point at which an investigative detention exceeds its permissible scope and rises to the level of a full-fledged arrest is decided on a case-by-case basis. U.S. v. Vite-Espinoza (C.A.6, 2003),342 F.3d 462, 472.
 {¶ 11} A "complete restriction" of liberty that is not excessive does not convert an investigatory detention into an arrest. U.S. v. Bautista (C.A.9, 1982), 684 F.2d 1286, 1289
(concluding that initial handcuffing of suspects did not convert investigatory stop into an arrest in view of the potentially dangerous nature of the activity and individuals suspected). Importantly, investigative stops need not always be terminated within a few minutes. Bautista, supra. If the purpose underlying a Terry stop is to be served, the officers must be able to detain an individual for the time necessary to investigate. Michigan, at 700 n. 12. "As long as an officer continues to have reasonable suspicion of criminal activity, [the officer] may extend the length of the stop in order to investigate." In re Lester, at ¶ 14. If law enforcement officers' actions go beyond investigating the suspicious circumstances leading to the original stop, the detention becomes an arrest and must be supported by probable cause. State v.Jackson (1996), 110 Ohio App.3d 137, 142, citing Florida,
supra.
 {¶ 12} Appellant's brief on appeal characterizes appellant's detention as an arrest and maintains no probable cause supported the arrest. Perhaps because appellant's objections in the trial court did not raise the issue of probable cause, the trial court's analysis focused on whether appellant's detention was proper under the "reasonable suspicion" standard. In any event, we agree with the trial court that appellant initially was subjected to an investigatory detention as opposed to a formal arrest.
 {¶ 13} Officer Griggs testified his intent was simply to investigate the situation by asking appellant a few questions; he did not intend to arrest appellant. He further testified that the detention was brief in duration, lasting approximately five minutes, and was for purposes of investigating appellant's actions. Appellant was not handcuffed at any time, and the officers never uttered the words "you're under arrest" until after appellant produced the baggie containing crack cocaine. If the trial court believed the officer's testimony to be true, it could reasonably conclude appellant initially was subject to an investigative detention and was not under formal arrest. In reM.H., Medina App. No. 2003 06 DQ 0295, 2003-Ohio-7371
(concluding juvenile in a motel room was under a Terry
investigative detention as opposed to a custodial interrogation despite officers' orders to remain sitting on the bed while they investigated). Accordingly, the issue is whether reasonable suspicion justified the investigatory detention.
 {¶ 14} The fact an individual is in a neighborhood that drug users frequent is alone insufficient to support reasonable suspicion. Brown, at 52 (noting that the officer was unable to point to any facts supporting his conclusion that the situation was "suspicious," the record indicated people's presence in the alley was not unusual, and appellant's presence in a neighborhood frequented by drug users, standing alone, was not a basis for concluding that appellant himself was engaged in criminal conduct). As the court in Brown explained, "the appellant's activity was no different from the activity of other pedestrians in that neighborhood." Id.
 {¶ 15} On the other hand, officers are not required "to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." Illinois v. Wardlow (2000),528 U.S. 119, 124, 120 S.Ct. 673. Accordingly, "the fact that the stop occurred in a `high crime area' [is] among the relevant contextual considerations" in a detention analysis. Id. (noting individual's presence in a heavy drug trafficking area and his unprovoked flight upon noticing the police were sufficient to satisfy the reasonable suspicion standard). Nervous, evasive behavior is pertinent in determining reasonable suspicion. Id.
 {¶ 16} The propriety of an investigatory stop must be assessed in light of the totality of circumstances viewed from the standpoint of a reasonable police officer who must confront those circumstances on the scene. Wright, supra, quoting Statev. Williams (Aug. 30, 2001), Cuyahoga App. No. 78732 (other citations omitted); State v. DeCaminada, 148 Ohio App.3d 213,2002-Ohio-2917 (concluding officer had reasonable suspicion to justify investigatory detention of appellant who, late at night, was alone in the passenger seat of a car in dimly lit parking lot, and break-ins had occurred in the area); In re Lester,
supra (concluding reasonable suspicion supported officer's stop of juvenile's vehicle in school parking lot, where officers, at school because of a bomb threat, noticed the juvenile enter the lot, pull into a parking space, pause for a few seconds, make eye contact with the officers, then back out of the space and attempt to exit the school grounds); State v. Foster (1993),87 Ohio App.3d 32; Bell, supra.
 {¶ 17} Under those parameters, the officers here had reasonable suspicion to detain appellant. The officers knew the area where the stop took place to be an area of high crime and drug activity. Although this fact alone is insufficient to demonstrate reasonable suspicion for purposes of an investigatory stop, additional specific and articulable facts are present in this case. The officers noticed appellant standing with several other juveniles pointing to, or moving, something in the palm of his left hand. According to Officer Griggs, one juvenile nudged appellant to alert him to the officers' presence. Once appellant noticed the officers, he not only appeared nervous, but "quickly" put that hand into his pocket. (Tr. 9.) Officer Griggs added that appellant was a suspected crack cocaine dealer: "[w]e know that Tyshawn and his brothers are suspected of selling crack-cocaine." (Tr. 22.) The officers had extensive experience with law enforcement related to drugs, particularly in the area where they found appellant.
 {¶ 18} While appellant's conduct may have been wholly lawful, the specific facts to which the officers testified were sufficient to raise reasonable suspicion in officers who observe drug "behavior" on a regular basis. Wardlow, at 125 (noting that "[e]ven in Terry, the conduct justifying the stop was ambiguous and susceptible of an innocent explanation"). Appellant's initial detention thus was lawful.
 {¶ 19} The next issue argued on appeal is whether appellant voluntarily consented to the search subsequent to the investigatory stop. The record is not clear whether the officers physically searched appellant. Officer Griggs testified appellant relinquished the baggie containing crack cocaine from his pocket after speaking to his father the second time. Appellant's father testified he could not recall whether the officers physically searched appellant's pocket. In either event, the issue is whether appellant voluntarily allowed the officers access to the baggie.
 {¶ 20} A defendant waives his or her Fourth Amendment protection by consenting to a search, provided the consent is voluntary. State v. Lattimore, Franklin App. No. 03AP-467, 2003-Ohio-6829, citing State v. Barnes (1986),25 Ohio St.3d 203, 208. The principle equally applies to juveniles. State v.Davis (1978), 56 Ohio St.2d 51, 56; In the Matter of Dolibor
(June 15, 1981), Ross App. No. 799. Where a lawful detention occurs, the state bears the burden of demonstrating by clear and convincing evidence that consent was freely and voluntarily given, free from either express or implied duress or coercion. Id.; Schneckloth v. Bustamonte (1973), 412 U.S. 218,93 S.Ct. 2041.
 {¶ 21} "The standard of proof to show a waiver ofFourth Amendment rights is less strict than that required to demonstrate a waiver of Fifth or Sixth Amendment rights. It need not be shown that there has been a knowing and intelligent waiver. Rather, the court must examine the totality of the circumstances to determine the voluntariness of consent." Lattimore, supra, quotingBarnes, at 208-209; State v. Elam, Hancock App. No. 5-02-57, 2003-Ohio-1577 (concluding appellant's consent was voluntary even though officers told him he was not allowed to leave the room until they searched it, where officers read a consent form aloud informing appellant of his right to refuse, appellant signed it without asking any questions, none of the officers had their weapons drawn, and appellant was never handcuffed or restrained);Lattimore, supra (determining totality of circumstances demonstrated appellant's consent was voluntary where officers lawfully detained appellant, officers made no promises or threats to obtain consent, and appellant initially cooperated with the officers); Foster, supra (concluding consent to search vehicle was involuntary where appellant felt constrained to sign the consent form because he believed the officers would conduct a search anyway after delaying him for two hours); State v.Forrester (Feb. 6, 1998), Greene App. No. 97-CA-47 (remanding issue of whether consent was voluntary where officer stated to a pregnant woman "[t]hey're not going to like it if you tell us to go get a search warrant. * * * For your own good, you'd better sign this now or things could get a little rough"); Bell,
supra.
 {¶ 22} Factors used to determine voluntariness of consent include: (1) the voluntariness of the appellant's custodial status, (2) the presence of coercive police procedures, (3) the extent and level of the appellant's cooperation with the police, (4) the appellant's awareness of his right to refuse consent, (5) the appellant's education and intelligence, and (6) the appellant's belief that no incriminating evidence will be found. Id. Other factors may include the age of the appellant and the duration of questioning. State v. Bennett (June 21, 2000), Ross App. No. 99 CA 2509. Although knowledge is a factor, an appellant need not know he or she had a right to refuse consent.Schneckloth, supra. Further, the fact of custody alone is insufficient to demonstrate a coerced consent to search. U.S. v.Watson (1976), 423 U.S. 411, 424, 96 S.Ct. 820.
 {¶ 23} Applying the above factors, we note that although appellant did not agree to his detention at the hands of the officer, appellant was lawfully detained based on the officers' reasonable suspicion that criminal activity was afoot. Under the second and third prongs, appellant initially cooperated by sitting on the ground when so asked, and he answered the officers' initial questions, but he initially refused consent to search. The fourth prong is difficult to assess on this record, as the evidence does not indicate appellant was advised of his right to refuse consent. Similarly, an analysis of the fifth prong is problematic on this record, as appellant's education and intelligence level are not apparent from the record. While appellant was a juvenile at the time, the officers allowed appellant to speak with his father in confidence on two occasions during the detention, thereby mitigating at least to some degree appellant's age. Finally, under the sixth element, appellant was aware incriminating evidence would be found in his pocket if he were searched.
 {¶ 24} Under the foregoing analysis, the issue is whether the police procedures were coercive, when appellant, who knew he had incriminating evidence in his pocket, was detained until he allowed the search but only after the officer mentioned a search warrant.
 {¶ 25} Consent may be invalidated where it is premised on a search warrant that turns out to be invalid. Bumper v. State ofNorth Carolina (1968), 391 U.S. 543, 548-549, 88 S.Ct. 1788. InBumper, the officer came to the individual's front door and told the individual he possessed a warrant to search the home when in actuality he did not. The court found this type of situation "instinct with coercion," leaving the individual with no right to refuse. Id. at 550. If, however, an officer has a basis for obtaining a search warrant and informs an individual that a warrant can be procured, that fact alone does not render consent involuntary. State v. Clelland (1992),83 Ohio App.3d 474; State v. Vanleer (Nov. 7, 1996), Cuyahoga App. No. 70268 (concluding consent was voluntary, despite officer's statement that he had probable cause to obtain a search warrant, where police canine alerted officer to contraband).
 {¶ 26} In Clelland, the appellant argued his consent to search was involuntary, contending he gave permission to search his car only because the officers stated that if he did not consent, they would obtain a search warrant. Disagreeing, the court stated that "[w]here the record clearly reveals no coercion and a police officer does not falsely claim possession of a search warrant, but rather candidly informs a person why a search is needed, either with his consent or with a search warrant, and the person clearly understood that he had a constitutional right to withhold consent, a finding of voluntariness is appropriate." Id. Because the appellant had signed a consent form and knew of his right to refuse, the court held the consent to search was voluntarily given. Id. at 481-482; Vanleer, supra.
 {¶ 27} By contrast, in State v. Clark (Nov. 3, 2000), Montgomery App. No. 18314, the court noted that consent is involuntary where officers advise they will obtain a search warrant in the absence of consent, but the officers lack probable cause to obtain the warrant. As the court explained, "[i]f the officer's statement simply advises the suspect of his precise legal situation, such a `threat' is not coercion. State v. Berg
(Oct. 4, 1996), Montgomery App. No. 15313, unreported at p. 3. However, this requires the officer to be confident in his assessment that probable cause exists to issue a search warrant. Even if the officer has a good faith expectation that a warrant will issue, if he is wrong, he has thereby misinformed the suspect of a key fact that he relied on in giving his consent. For this reason, if an officer advises a suspect he will obtain a search warrant if consent is not given, probable cause must exist to obtain that warrant." Clark, supra.
 {¶ 28} In Jackson, a case factually similar to this appeal, the court held the appellant's consent to search was involuntary. Based on a reported disturbance in a park where the appellant was stopped, the officer in Jackson detained the appellant's vehicle to identify the occupants and asked the appellant what he was doing in the park. Given the appellant's answers, the officer asked to search the appellant's vehicle. The appellant made comments about taking American Government in school and was aware of his right to refuse consent without a warrant. The officer replied "[b]ut there is also the possibility of obtaining a search warrant." Id. at 139.
 {¶ 29} The court found that the officer's stated purpose in conducting the investigatory stop ended when he identified the occupants of the car, as the officer discovered no further evidence of criminal activity. As the court explained, "[b]y the time Officer David asked appellant for permission to search the car, he had identified the occupants of the vehicle and found no other indicia of criminal conduct. While the officer's first request for such a search might be considered as ordinary police work, once such a request is clearly and definitively denied, the encounter begins to take on a coercive tone. In this case, the officer and appellant engaged in a prolonged colloquy on the issue of police power to search a vehicle. During this time, appellant repeatedly refused the officer permission to search. Yet the officer continued in his pursuit to obtain appellant's consent. It was not until the specter of a search warrant was raised that appellant acquiesced to the search." (Emphasis added.) Id. at 143. Considering the totality of the circumstances, the court held appellant's consent was the result of coercive police procedure and granted only in submission to a claim of lawful authority. Id.
 {¶ 30} Similarly, in DeCaminada the court held appellant's eventual relinquishment of a pill bottle to be involuntary. The appellant was a woman alone in the vehicle at a late hour in a dimly lit parking lot. After the officer, during a lawful detention, noticed a bottle in the appellant's vehicle, the officer two times or, according to appellant, three times requested the bottle. The appellant consistently refused to give the bottle to the officer. According to the appellant's testimony, the officer implied a more difficult and prolonged detention if she failed to cooperate. In examining the facts, the court stated the evidence gave rise to a reasonable inference that the appellant refused to hand over the bottle because it contained incriminating evidence. "That fact supports a finding that her subsequent acquiescence to the officer's renewed demand was involuntary." Id. at 220. As the court explained, although a suspect's refusal to hand over incriminating evidence is not necessarily determinative of coercion, it is an "important" factor to determine whether coercion was used in further demands. Id.
 {¶ 31} Whether appellant's consent was voluntary is a close question. Appellant relies on three factors to support his contention that he was coerced into turning over the baggie: he knew incriminating evidence would be found in his pocket, the officers repeatedly asked him to allow them to search his pockets, and the officers raised the issue of their obtaining a search warrant. The officers' continued requests to appellant is troubling. Although the officers' purpose in detaining appellant was not fulfilled, nothing in the record suggests the officers were continuing to investigate the circumstances. Rather, the officers were simply continuing to request that they be permitted to search appellant. The officers may not continue to question appellant until they receive the responses they want. Jackson,
supra. Moreover, although appellant was surrounded by other individuals, including his father, and was in his own neighborhood, those factors primarily serve to mitigate appellant's youthful age.
 {¶ 32} While the officers' allowing appellant to speak with his father makes this a closer case than either Jackson orDeCaminada, the totality of the circumstances is similar toJackson. Here, as in Jackson, the officers' detention of appellant had reached an impasse: they discovered no illegal activity as a result of their detaining appellant. As a result, they, as the officers in Jackson, began to repeat their request to search appellant. Appellant refused their request, and in response the officers, as in Jackson, mentioned they could get a warrant, even though the facts here would not support one. Their statement produced the same result: appellant handed over the incriminating evidence. When we combine those factors with the fact that appellant surely knew, as did the appellant inDeCaminada, that the material he turned over to the officers was incriminating, we are compelled to conclude appellant did not voluntarily consent to hand over the baggie to the officers.
 {¶ 33} Accordingly, we sustain appellant's single assignment of error, reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
Judgment reversed and case remanded.
Lazarus, P.J., and Bowman, J., concur.