[Cite as *State v. Smith*, 2012-Ohio-5962.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2012-03-022 |
| - vs - | : | O P I N I O N<br>12/17/2012 |
| | : | |
| BRUCE A. SMITH, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 11CR27642

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Flanagan, Lieberman, Hoffman & Swaim, Dennis A. Lieberman, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402, for defendant-appellant

**S. POWELL, P.J.**

{¶ 1} The question on this appeal is whether the trial court erred in failing to suppress the evidence found in a defendant's vehicle when he alleges his consent to search was not voluntary. We affirm the judgment, finding from the totality of the circumstances that the defendant voluntarily consented to the search of his vehicle.

{¶ 2} Defendant-appellant, Bruce A. Smith, was charged in Warren County Common Pleas Court with possession of drugs after he was stopped for a marked lanes violation and

a search of his vehicle revealed a pill bottle that included some painkillers not prescribed for him. After unsuccessfully moving to suppress the evidence, Smith pled no contest and was convicted.

{¶ 3} In his single assignment of error on appeal, Smith avers that the trial court erred in denying his motion to suppress. Smith specifically argues that "where a traffic stop is improperly prolonged and a driver does not freely and voluntarily consent to a search of his car, the fruits of such a search must be suppressed."

{¶ 4} An appellate court's review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Forbes*, 12th Dist. No. CA2007-01-001, 2007-Ohio-6412, ¶ 29. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* The appellate court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. *Id.*

{¶ 5} Smith does not contest his detention for the traffic stop for a marked-lane violation. And generally, when detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *See State v. Howard*, 12th Dist. Nos. CA2006-02-002, CA2006-02-003, 2006-Ohio-5656, ¶ 15. This time period also includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *Id.*

{¶ 6} In the case at bar, the arresting officer testified that Smith was

> defensive immediately, as soon as I walked up, he was wanting to know why he was being stopped. As soon as I would ask him a question, he was like why do you want to know that? He never really came straight forward and answered any questions until I explained to him why I was asking him questions and calming him down, and he would answer the question and then I would ask him another question and it was right back to the same defensive mannerism. He appeared to be nervous. [sic]

{¶ 7} The officer stated that he took Smith's driver's license and insurance

information and asked Smith if he had anything illegal in his car, such as drugs, alcohol, knives, etc. Smith told the officer he did not.

{¶ 8} When the officer checked Smith's information, he noticed that Smith had prior convictions. According to the transcript of the suppression hearing, the officer found "several OVI/drug/alcohol convictions on his [Smith's] record." The trial court subsequently noted in its decision that "defendant had several prior drug and alcohol related violations on his record." However, the state acknowledged at oral argument that it was not clear from the officer's testimony whether Smith had any prior drug convictions. While we understand the confusion from the officer's testimony, we will consider for purposes of this review that Smith did not have prior separate drug convictions.

{¶ 9} After the computer check revealed the prior convictions, the officer testified, "[a]t that point, I decided to go up and ask him some more questions. I asked him once again, if he had anything illegal in his car that I needed to be aware of." The officer said Smith "started looking around in his car," and answered that he did not have anything illegal in his vehicle. The officer asked Smith, "[d]o you care if I take a look?" According to the officer, Smith said, "No, you go ahead." Smith left his vehicle and the officer "had him stay at the front of my vehicle" during the search. .

{¶ 10} The prosecutor asked the officer if he had issued a citation prior to asking to search the vehicle. The officer said, "No, at that point, no because like is said, [sic] I returned to my car and saw that there was a history of drug and alcohol and based on the way he had answered my questions, I determined to pursue that investigation farther instead of doing the traffic violation at that time." [sic]

{¶ 11} After reviewing the record under the applicable standard of review, we conclude that Smith was being lawfully held when the officer asked him for permission to search, and, while this is a close case, we draw this conclusion for two reasons.

{¶ 12} The record indicates the officer had not completed the purpose of the traffic stop before he asked Smith for permission to search his vehicle. Where a consent to search is sought and obtained during the period of time reasonably necessary to process the traffic citation -- which is while a violator is being lawfully detained -- the traffic stop and resulting detention is not unlawfully prolonged. *State v. Loffer*, 2nd Dist. No. 19594, 2003-Ohio-4980; *see State v. Lattimore*, 10th Dist. No. 03AP-467, 2003-Ohio-6829, ¶ 15; *see also State v. Landers*, 10 Dist. No. 07AP-475, 2007-Ohio-7146.

{¶ 13} Further, if during the initial detention, an officer ascertains reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual. *State v. Robinette*, 80 Ohio St.3d 234, 241(1997). Reasonable articulable suspicion exists when there are specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988).

{¶ 14} In forming reasonable articulable suspicion, law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *State v. Troutman*, 3rd Dist. No. 9-11-17, 2012-Ohio-407, ¶ 25, quoting *United States v. Arviza*, 534 U.S. 266, 273-274, 122 S.Ct. 744 (internal citations omitted). Therefore, determining whether the officer's actions were justified depends upon the totality of the circumstances, which must "be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991).

{¶ 15} When questioned by defense counsel, the officer indicated that he investigated further on the traffic stop because of Smith's OVI record, and "the fact that he appeared to be agitated when I was asking questions, he appeared to be nervous. He did not seem to want

to be in contact with me at that time." We note that the officer previously testified that Smith looked around the vehicle while responding to the question about any contraband present in his vehicle.

{¶ 16} Based on the distinctive combination of factors present for the officer in this case, we find the officer had reasonable articulable suspicion to investigate further. *See State v. Christopher*, 12th Dist. No. CA2009-08-041, 2010-Ohio-1816, ¶ 26 (courts have held that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion).

{¶ 17} The officer testified that Smith consented to a search of his vehicle during the encounter. To establish the consent exception to the probable-cause and warrant requirements of the federal and Ohio constitutions, the state has the burden of establishing by "clear and positive" evidence that consent was freely and voluntarily given, and not the result of a mere submission to a claim of lawful authority. *State v. Posey*, 40 Ohio St.3d 420, 427 (1988); *State v. Taylor*, 12th Dist. No. CA2001-02-003, 2001-Ohio-8676; *State v. Lattimore*, 2003-Ohio-6829 at ¶ 15.

{¶ 18} Every search situation is unique unto itself and no set of fixed rules will be sufficient to cover every situation. *Robinette* at 242. When the subject of a search is not in custody and the state attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that the state demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-249, 93 S.Ct. 2041 (1973); *see also Christopher* at ¶ 45-46 (additional factors gleaned from *Bustamonte* include evaluation of words and conduct of suspect, whether suspect was a "newcomer to the law;" and his or her education and intelligence).

{¶ 19} Voluntariness is a question of fact to be determined from all of the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken

into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. *Robinette* at 244-243, citing *Bustamonte* at 248-249.

{¶ 20} After considering the totality of the circumstances surrounding Smith's consent to search his vehicle, we find Smith was not a "newcomer to the law," there is no evidence he was of limited intelligence, there is no indication Smith consented under duress or coercion, express or implied, there is every indication he was capable of questioning the officer's motives or methods and did not simply submit to the officer's claim of lawful authority. *See Lattimore*, 2003-Ohio-6829 at ¶ 17 (defendant's consent to the search demonstrates only his desire to resolve the situation, and there is no evidence of any coercive police procedure). Therefore, we find that Smith voluntarily consented to the search of his vehicle.

{¶ 21} We also note that Smith argued that he was not sufficiently informed the officer was asking to search the vehicle when he agreed to the officer taking "a look." As previously noted, the officer asked Smith if he had anything illegal in his vehicle, and when Smith looked around the vehicle and stated he did not have anything illegal, the officer asked Smith if he cared "if I take a look?" Smith reportedly said, "No, you go ahead." We find that conversation sufficient to inform Smith that the officer was asking to search, as the record indicates Smith had previous interactions with law enforcement.

{¶ 22} We have considered all of the arguments set forth by Smith in his appeal and find none of them warrants a reversal of the trial court's decision denying Smith's motion to suppress the evidence.[1] Smith's single assignment of error is overruled.

{¶ 23} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.

---

1. While we are aware of the Ohio Supreme Court's recent decision in *State v. Gardner*, Slip Opinion No. 2012-Ohio-5683, it is distinguishable because, in *Gardner*, the trial court relied on the subsequently discovered arrest warrant and did not analyze the propriety of the defendant's detention and search.