[Cite as *State v. Rabe*, 2014-Ohio-2008.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :          CASE NO.   CA2013-09-068

                              :          O P I N I O N
 - vs -                                  5/12/2014

                              :

DAVID L. RABE,                          :

    Defendant-Appellant.            :

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2012CR00531

D. Vincent Faris, Clermont County Prosecuting Attorney, Judith A. Brant, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

The Farrish Law Firm, Michaela M. Stagnaro, 810 Sycamore Street, 6th Floor, Cincinnati, Ohio 45202, for defendant-appellant

**PIPER, J.**

{¶ 1}   Defendant-appellant, David Rabe, appeals his convictions and sentence in the Clermont County Court of Common Pleas for two counts of operating a vehicle while under the influence of alcohol (OVI), along with counts of failing to stop after an accident and driving under an OVI suspension.

{¶ 2}   During the evening hours of June 13, 2012, Deputy Chris Allen was dispatched

to the scene of an accident reported by a 911 caller. The caller stated that he observed a white work van with ladders attached to the roof hit two vehicles and flee the scene. The 911 caller followed the van to a side-street near an apartment complex, and got out of his vehicle to approach the van. At that point, the white work van drove toward the caller, and the ladders attached to the van's roof hit the caller's vehicle causing damage. The caller, who had ducked out of the way of the ladders and was not injured, watched the van enter the apartment complex and park haphazardly.

{¶ 3} The caller approached the driver, later identified as Rabe, and tried to speak to him. During the interaction, the caller smelled alcohol on Rabe and observed Rabe acting as if he was intoxicated. Rabe began telling other people in the parking lot that the caller had just hit his work van, and then he walked into an apartment building.

{¶ 4} After the interaction with Rabe, the caller waited for Deputy Allen to arrive. Once Deputy Allen arrived at the apartment complex, the 911 caller described Rabe and identified the white van he had followed from the scene of the accident. The 911 caller directed Deputy Allen to the specific building of the apartment complex he saw Rabe enter after their interaction.

{¶ 5} Deputy Allen approached the white work van, which had ladders attached to the roof, and observed "significant rear damage." Deputy Allen also noticed several people near the van who were working on a vehicle. Deputy Allen asked the people if they were familiar with the owner of the white work van, and they stated that they were. The people working on the vehicle directed Deputy Allen to a specific apartment in building 68, and informed Deputy Allen that the driver of the white van was named Dave. Deputy Allen approached the apartment, knocked on the door, and was greeted by a woman later identified as Rabe's girlfriend. When Deputy Allen asked to speak to the owner of the white work van, the woman told Deputy Allen to "hold on a second," and then loudly called for Rabe. Rabe did not

respond so Rabe's girlfriend permitted Deputy Allen to enter the apartment. Once in the apartment, Deputy Allen found Rabe making toast in the kitchen.

{¶ 6} Deputy Allen observed that Rabe's eyes were bloodshot and glassy and that his speech was somewhat slurred. Rabe had difficulty maintaining his balance, and another deputy, who had since arrived at the apartment, had to help Rabe keep his balance. When questioned by the deputies, Rabe stated that he had not driven the van that day, but could not tell the deputies how the van was damaged or who could have been driving it at the time of the accident. Deputy Allen informed Rabe of his belief that Rabe was the driver of the van at the time of the accident. Deputy Allen informed Rabe that he was "going to take him into custody * * *." Deputy Allen placed Rabe, who had become "uncooperative and upset," in handcuffs and placed him in the back of his police cruiser until the highway patrol arrived. As he placed Rabe in his cruiser, Deputy Allen noticed a "significant smell of alcohol coming from [Rabe's] person."

{¶ 7} Trooper Drew Untied of the highway patrol arrived at the scene of the accident and was told that a white van had caused the accident and then had fled the scene. The drivers of the two vehicles hit by the white work van informed Trooper Untied that the van had turned left in front of one vehicle, crashed into it, and then came to a stop. The white van then backed up suddenly, hitting the other vehicle in the process. The van then drove over the curb and fled the scene. The drivers told Trooper Untied that the white work van suffered heavy damage to its rear, and that a witness to the accident had followed the white van after it fled the scene.

{¶ 8} Police dispatch informed Trooper Untied that the driver of the white work van had been detained at the apartment complex, and Trooper Untied went to the complex to investigate further once he had finished investigating the scene of the accident. Once at the complex, Trooper Untied observed that Rabe's van had extensive damage on the rear panel

and bumper. Other officers at the scene informed Trooper Untied that Rabe's girlfriend had given a statement that Rabe arrived at the apartment shortly before Deputy Allen knocked on the door, and that Rabe was driving the white work van that day. Once he had all of the pertinent information, Trooper Untied questioned Rabe.

{¶ 9} Trooper Untied opened the door to Deputy Allen's police cruiser to speak to Rabe, and Trooper Untied detected a strong odor of alcohol coming from inside the cruiser. Trooper Untied also observed that Rabe's eyes were "very bloodshot and glassy" and that Rabe's speech was slightly slurred.

{¶ 10} Trooper Untied began the process of administering field sobriety tests, and questioned Rabe about the incident. Rabe denied drinking and also stated that he was not aware of what happened to his van. Rabe told Trooper Untied that he had an inner ear problem that caused ringing in his ear and left him unbalanced. Rabe also told Trooper Untied that he had an injured rotator cuff, a bulging disc in his lower back, a pinched nerve, and had taken a prescribed sleeping pill prior to the officers coming to his home. Trooper Untied then administered a horizontal gaze nystagmus (HGN) test and found that Rabe exhibited six out of a possible six clues of impairment. Trooper Untied also administered a walk-and-turn test and found five out of a possible eight clues, as well as a one-leg-stand test with three out four clues indicating impairment. Trooper Untied then asked Rabe to recite portions of the alphabet and to count backwards, and Rabe had difficulty doing both. Officer Untied then informed Rabe that he would conduct a portable breath test, and Rabe refused to cooperate in the testing and subsequently refused to take the Breathalyzer test.

{¶ 11} Rabe was indicted on two counts of OVI, and counts of failing to stop after an accident and driving under an OVI suspension. Rabe filed a motion to suppress, arguing that his arrest, by either Deputy Allen or Trooper Untied, was not based upon probable cause. The trial court held a hearing on Rabe's motion, and heard testimony from Trooper Untied,

- 4 -

Deputy Allen, and Rabe's girlfriend. The court overruled Rabe's motion to suppress, and the matter was scheduled for trial.

{¶ 12} Ten days before the trial, Rabe filed a motion to substitute appointed counsel. The trial court granted Rabe's motion, and issued an entry on March 20, 2013 stating that Rabe was not permitted to use any additional witnesses or evidence at trial unless it could be shown that the evidence could not have, in good faith, been discovered prior to the date of the entry, March 20, 2013. Rabe later filed a motion in limine to prohibit the state from introducing photos taken of Rabe's van on the day of the incident, some of which depicted beer cans inside the van. The trial court overruled Rabe's motion, and the matter proceeded to a two-day jury trial.

{¶ 13} The jury found Rabe guilty of all counts, and the trial court sentenced Rabe to an aggregate three-year sentence, as well as a fine of $1,375, court costs, and restitution. Rabe now appeals his convictions and sentence, raising the following assignments of error.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ERRED AS A MATTER OF LAW BY OVERRULING APPELLANT'S MOTION TO SUPPRESS.

{¶ 16} Rabe argues in his first assignment of error that the trial court erred in overruling his motion to suppress.

{¶ 17} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran,* 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis,* 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038. "An appellate court, however, independently reviews the trial court's

legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

{¶ 18} Rabe argues that the motion to suppress should have been granted because (1) there was not probable cause to arrest him, (2) he was held for an unreasonable amount of time in Deputy Allen's cruiser until Trooper Untied arrived to investigate and administer the field sobriety tests, and (3) the field sobriety tests were not properly performed.

{¶ 19} In order to arrest a person without a warrant, an officer must have probable cause. *State v. Aslinger*, 12th Dist. Preble No. CA2011-11-014, 2012-Ohio-5436, ¶ 13, citing *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225 (1964). The test for establishing probable cause to arrest without a warrant is whether the facts and circumstances within an officer's knowledge were sufficient to warrant a prudent individual in believing that the defendant had committed or was committing an offense. *Id.* A probable cause determination is based upon the totality of the facts and circumstances. *State v. Oglesby,* 12th Dist. Clinton No. CA2004-12-027, 2005-Ohio-6556, ¶ 17.

{¶ 20} During the motion to suppress hearing, the trial court heard ample evidence to establish that both Deputy Allen and Trooper Untied had probable cause to arrest Rabe. Both officers testified to smelling alcohol coming from Rabe, that Rabe's eyes were bloodshot and glassy, and that Rabe was slurring his speech and having difficulty with his balance. The officers were also given information that the white work van with ladders attached to the roof, which was owned by Rabe, had caused the accident. The officers observed extensive damage to Rabe's van, indicative of being involved in the accident with the two vehicles. The officers also had information from Rabe's girlfriend that Rabe had been driving the van on the day of the accident, and that he had only arrived at the apartment moments before Deputy Allen arrived to question Rabe. Based upon the totality of the circumstances, the officers

- 6 -

were warranted in believing that Rabe had driven under the influence and had left the scene of the accident. Therefore, Rabe's arrest was supported by probable cause and the trial court properly overruled that aspect of the motion to suppress.

{¶ 21} Rabe also argues that his motion to suppress should have been granted because Trooper Untied did not question him until approximately an hour after Deputy Allen placed him in the police cruiser. Rabe suggests that absent probable cause to arrest for the OVI-related crimes, all Deputy Allen had was a reasonable suspicion of criminal activity so that Deputy Allen could have only detained Rabe for a reasonable time for a more in-depth investigation. Rabe contends that the hour-long detention before Trooper Untied questioned him was unreasonable.

{¶ 22} If during an initial detention, an officer ascertains reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the suspect. *State v. Smith*, 12th Dist. Warren No. CA2012-03-022, 2012-Ohio-5962, citing *State v. Robinette,* 80 Ohio St.3d 234, 241(1997). Reasonable articulable suspicion exists when there are specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *State v. Bobo,* 37 Ohio St.3d 177, 178 (1988).

{¶ 23} The record is clear that Deputy Allen had probable cause, not merely an articulable suspicion, to detain Rabe for further investigation. During the time that Rabe sat in the back of Deputy Allen's police cruiser, the police continued their investigation of the accident site, as well as questioned witnesses to further develop the facts. Trooper Untied remained at the crash site until he had investigated properly and had ensured that the damaged vehicles were safely removed from the road. At that point, Trooper Untied went to the apartment complex, where he received additional information and confirmed facts indicating that Rabe was the driver of the white work van that had caused the accident and

- 7 -

fled the scene.

**{¶ 24}** These facts, as already discussed above, indicated that Rabe was intoxicated, had arrived at the apartment shortly before Deputy Allen arrived, and that Rabe was driving the white work van. The time it took Trooper Untied to appear at the apartment complex was reasonable, and he did nothing to delay the investigation and fact-gathering process. As such, Trooper Untied's questioning was proper, and the motion to suppress was in this regard also properly overruled.

**{¶ 25}** Rabe also argues that his motion to suppress should have been granted because Trooper Untied failed to administer the field sobriety tests in compliance with the guidelines set forth by the National Highway Traffic Safety Association (NHTSA). Specifically, Rabe argues that Trooper Untied did not comply with the standards because he did not take into account how Rabe's medical conditions would affect his ability to comply with the field sobriety tests.

**{¶ 26}** In order for field sobriety testing evidence to be admissible, the state is not required to show strict compliance with testing standards, but must instead demonstrate that the officer substantially complied with NHTSA standards. R.C. 4511.19(D)(4)(b); and *State v. Clark*, 12th Dist. Brown No. CA2009-10-039, 2010-Ohio-4567. "A determination of whether the facts satisfy the substantial compliance standard is made on a case-by-case basis." *State v. Fink*, 12th Dist. Warren Nos. CA2008-10-118, CA2008-10-119, 2009-Ohio-3538, ¶ 26; *State v. Selvage*, 12th Dist. Clermont No. CA2011-08-058, 2012-Ohio-2149.

**{¶ 27}** After reviewing the record, we find that Trooper Untied substantially complied with the NHTSA requirements when administering the field sobriety tests. Trooper Untied testified at the motion to suppress hearing, and the state presented a video recording of Rabe performing the field sobriety tests. A review of Trooper Untied's testimony and the video demonstrates that Trooper Untied properly explained the testing to Rabe, and properly

directed Rabe in taking each test. Trooper Untied followed NHTSA guidelines by discussing any possible medical conditions with Rabe, and Rabe informed Trooper Untied that he had inner ear problems, an injured rotator cuff, and bulging disks in his back. Rabe also informed Trooper Untied that he had taken a sleeping pill that evening.

{¶ 28} Trooper Untied's testimony and the video demonstrate that Trooper Untied took Rabe's medical impairments into consideration when conducting the field sobriety tests. For example, at one point during the one-leg-stand test, Trooper Untied gave Rabe the option of using either leg on which to balance because Rabe complained that his pinched nerve made it difficult to stand on his right leg. However, at no other time did Rabe state that he was unable to perform any of the tests because of his medical conditions, other than stating that his back hurt during the one-leg-stand test. There is no indication in the record that Rabe was unable to perform the tests or that Rabe's alleged medical conditions made the results of the tests unreliable or skewed.

{¶ 29} Based on the facts of this case, the state carried its burden to demonstrate substantial compliance with the NHTSA requirements so that the tests were admissible and Rabe's motion to suppress was properly overruled. Therefore, Rabe's first assignment of error is overruled.

{¶ 30} Assignment of Error No. 2:

{¶ 31} THE TRIAL COURT ERRED BY RESTRICTING APPELLANT FROM INTRODUCING ANY EVIDENCE AND/OR WITNESSES THAT HAD NOT BEEN DISCLOSED PRIOR TO MARCH 20, 2013.

{¶ 32} Rabe argues in his second assignment of error that the trial court erred by closing discovery as of March 20, 2013, the day the trial court appointed Rabe new counsel.

{¶ 33} According to Crim.R. 16(L)(1), a trial court "may make orders regulating discovery * * *." A trial court's decision regarding a discovery order will not be reversed

absent an abuse of discretion. *State v. Cartwright*, 12th Dist. Preble No. CA2012-03-003, 2013-Ohio-2156. An abuse of discretion occurs when a trial court's decision is arbitrary, unconscionable or unreasonable. *State v. Smith*, 12th Dist. Butler No. CA2008-03-064, 2009-Ohio-5517, ¶ 31.

{¶ 34} The record indicates that ten days before Rabe's jury trial was scheduled to begin, he moved the court to appoint new counsel. Five days later, the trial court held a hearing on Rabe's motion to appoint new counsel. Rabe told the trial court that he wanted different representation because his original counsel was not preparing adequately for the upcoming trial, was too intent upon Rabe pleading guilty to the charges, and was not pursuing the evidence that Rabe claimed he had that established his innocence. The trial court asked Rabe what more his counsel could be doing for him, and what evidence or witnesses existed that Rabe's counsel was not pursuing. Rabe responded that the only witness he intended to call was his girlfriend, and he was unaware of any other evidence.

{¶ 35} The trial court granted Rabe's motion to appoint new counsel, but also ordered that discovery would be closed as of that date, March 20, 2013. The trial court reasoned that Rabe acknowledged that he had no other evidence or witnesses to present on his behalf, other than which was already discovered during the time of representation by Rabe's original trial counsel. We do not find that the trial court's decision was an abuse of discretion.

{¶ 36} The trial court's order limited Rabe to the evidence that was already collected during the normal discovery period before trial was scheduled to begin. Rabe untimely moved for substitution of counsel, and the matter was heard only five days prior to the scheduled commencement of Rabe's jury trial. The trial court's decision to close discovery as of the date of substitution of counsel did not foreclose the possibility of using newly discovered evidence, so long as the evidence could not have been, in good faith, discovered before the substitution of counsel occurred.

{¶ 37} Moreover, Rabe has not pointed to a single piece of evidence he was denied from admitting, and has not stated any prejudice by the trial court's order. Rabe did not proffer any evidence or witnesses he was foreclosed from presenting at trial because of the trial court's order, and he has not argued on appeal that there was any such evidence available to him after the date discovery was closed. As such, the trial court's decision to close discovery was not an abuse of discretion, and Rabe's second assignment of error is overruled.

{¶ 38} Assignment of Error No. 3:

{¶ 39} APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS THUS PREJUDICING HIS RIGHT TO A FAIR TRIAL.

{¶ 40} Rabe argues in his third assignment of error that his trial counsel was ineffective for failing to successfully advance the motion to suppress, and for not objecting to a photograph's admission at trial.

{¶ 41} Rabe first argues that his trial counsel was ineffective for not offering a more specific argument regarding the field sobriety tests within his motion to suppress and at the motion to suppress hearing. While the field sobriety tests were made an issue at the hearing on the motion to suppress, Rabe argues that his counsel did not fully explore the issue, and that if he had, the results of the hearing "may" have been different.

{¶ 42} In order to prove ineffective assistance of counsel, an appellant must establish that first, "his trial counsel's performance was deficient; and second, that the deficient performance prejudiced the defense to the point of depriving the appellant of a fair trial." *State v. Myers*, 12th Dist. Fayette No. CA2005-12-035, 2007-Ohio-915, ¶ 33, citing *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052 (1984). Regarding the first prong, an appellant must show that his counsel's representation "fell below an objective standard of

reasonableness." *Strickland*, 466 U.S at 688. The second prong requires the appellant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 43} Therefore, in order to establish that his trial counsel was ineffective, Rabe must demonstrate that the trial court would have granted the motion to suppress based upon an invalidity of the field sobriety tests. However, Rabe submits only that the results "may" have been different and is otherwise unable to demonstrate that the tests were performed in an improper manner.

{¶ 44} As previously discussed within Rabe's first assignment of error, Trooper Untied substantially complied with NHTSA standards when administering the tests. Despite Rabe's contention that further questioning of Trooper Untied would have revealed that he did not take Rabe's medical conditions into consideration during the testing, Trooper Untied's testimony and the video demonstrate otherwise. There is no indication in the record that any further or more intensive questioning during the motion to suppress hearing would have resulted in a different outcome. As such, Rabe cannot show that his trial counsel was ineffective in arguing the motion to suppress.

{¶ 45} Rabe next contends that his trial counsel was ineffective for not objecting to the admission of a photograph during the trial, which depicted beer cans in Rabe's van on the day of the accident. The record demonstrates that Rabe's trial counsel moved the court in a motion in limine to preclude the state from offering the photo at trial because the photograph of the beer cans in the van was irrelevant and likely to lead to unfair prejudice and confusion to the jury. However, the trial court overruled the motion, instead finding that the photograph was relevant and that its probative value was not outweighed by any potential prejudicial value.

{¶ 46} During the jury trial, Rabe's counsel did not object to the admission of the

photograph at the time the state discussed the photograph with Trooper Untied during his direct testimony.[1] Rabe now argues that the lack of an objection rendered his assistance of counsel ineffective. However, the record demonstrates that even if counsel had objected to the admission of the photograph at the time the photograph was first discussed, such objection would have been overruled because the photograph was admissible.

{¶ 47} "It is well-established that the admission or exclusion of evidence rests within the sound discretion of the trial court." *State v. Jones*, 12th Dist. Butler No. CA2012-04-077, 2013-Ohio-654, ¶ 54. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. *State v. Isham*, 12th Dist. Butler No. CA2013-07-123, 2014-Ohio-1689.

{¶ 48} Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." According to Evid.R. 403(A), relevant evidence is not admissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 49} The record indicates that the photograph in question was admissible. The photograph was relevant because it permitted the jury to see that Rabe's van contained empty beer cans at the time of the accident, which could be probative of the fact that Rabe had consumed alcohol prior to driving that day and that he was under the influence of alcohol when he drove.

{¶ 50} The record does not demonstrate that the probative value of the photograph was outweighed by any possible prejudicial effect it may have had. While it is true that some

---

1. Rabe's counsel objected to the admission of the photographs after the state called its last witness and the parties discussed which exhibits were being offered into evidence. Rabe's counsel objected to the photographs showing the beer, and the trial court overruled the objection, finding that the photographs were relevant, were not unduly prejudicial, and would not confuse the jury.

of the cans were located in the rear of the van and therefore could not be accessed by Rabe while he drove, such a fact would speak to the weight of the evidence, rather than to its admissibility. There was no indication that the jury would be, or was, confused by the photograph, or that the photograph was misleading to the jury in any manner. Therefore, the photograph was admissible, and any objection to its admissibility would have been properly overruled by the trial court.

{¶ 51} Having found that the results of the motion to suppress hearing would not have been different and that the photograph was admissible, Rabe has failed to demonstrate that his trial counsel's performance was ineffective. As such, Rabe's third assignment of error is overruled.

{¶ 52} Assignment of Error No. 4:

{¶ 53} THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTIONS.

{¶ 54} Rabe argues in his fourth assignment of error that his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.

{¶ 55} A manifest weight challenge examines the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other. *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298.

> In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Cummings*, 12th Dist. Butler No. CA2006-09-224, 2007-Ohio-4970, ¶ 12.

{¶ 56} While appellate review includes the responsibility to consider the credibility of

witnesses and weight given to the evidence, "these issues are primarily matters for the trier of fact to decide since the trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given the evidence." *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest miscarriage of justice, and only when the evidence presented at trial weighs heavily in favor of acquittal. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 57} When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *Wilson*, 2007-Ohio-2298. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded on other grounds.

{¶ 58} Rabe was convicted of OVI in violation of R.C. 4511.19(A)(1)(a), which provides, "no person shall operate any vehicle * * * if, at the time of the operation, any of the following apply: the person is under the influence of alcohol, a drug of abuse, or a combination of them." Rabe was also convicted of failing to stop after an accident or collision in violation of R.C. 4549.02, which prohibits a person from leaving the scene of an accident. Rabe was also convicted of operating a motor vehicle with a suspended license, in violation of R.C. 4510.14(A), which prohibits a person from driving while under an OVI-related suspension.

{¶ 59} After reviewing the record, each of Rabe's convictions was supported by sufficient evidence and was not against the manifest weight of the evidence. During the trial, the state presented testimony from the two drivers whose vehicles were hit by Rabe's white

work van, who testified that Rabe turned left in front of the first vehicle, causing the first vehicle to slam into the rear passenger portion of Rabe's work van. After Rabe's van had come to a stop, Rabe backed his van into the second vehicle, also hitting it and causing more damage to the back of the white work van. Both of the drivers testified that Rabe fled the scene without stopping.

{¶ 60} The state also presented testimony from the 911 caller who had witnessed the accident and followed Rabe once he fled the scene. The caller testified that he witnessed the accident and began to follow Rabe once Rabe left the scene. The caller testified that he exited his car once Rabe had turned near the apartment complex and the van came to a stop. The caller testified that upon exiting his vehicle to check on the driver of the white van, the van began driving toward him, and that the ladders on top of the white work van hit his own vehicle and caused damage. The caller then watched Rabe turn into the apartment complex and watched him exit the van. The two had an exchange wherein Rabe accused the caller of hitting his vehicle.

{¶ 61} The caller testified that after Rabe accused him of hitting his vehicle, he remained at the apartment complex until Deputy Allen arrived. The caller testified that during his exchange with Rabe, he smelled alcohol coming from Rabe and that Rabe exhibited behavior indicative of intoxication. The caller also made an in-court identification of Rabe as the driver he saw cause the accident and flee from the scene.

{¶ 62} The state also presented testimony from Deputy Allen regarding his investigation of the incident and of Rabe. Deputy Allen testified that he was dispatched in response to a 911 call wherein the caller reported the accident and that the driver fled the scene. Deputy Allen approached the apartment complex once he received an update that the caller had followed Rabe to the specific apartment building. Deputy Allen arrived at the apartment complex, spoke to the 911 caller, and observed extensive damage to the rear-

passenger side of Rabe's white work van. Deputy Allen then conversed with the people who were working nearby on their vehicle, and confirmed that the driver's name was Dave and that he lived in a particular apartment within the complex.

{¶ 63} Deputy Allen testified that upon his approach to the apartment, he knocked on the door and met a woman who was later identified as Rabe's girlfriend. The woman allowed Deputy Allen to enter the apartment, where he came into contact with Rabe in the kitchen. Deputy Allen testified that Rabe's eyes were bloodshot and glassy, and that he was slurring his speech. Deputy Allen also testified that Rabe had difficulty balancing and was "swaying back and forth" as the two conversed. Deputy Allen testified that he continued to question Rabe, and that Rabe denied having been the driver of the van.

{¶ 64} Once Rabe became belligerent and agitated, Deputy Allen handcuffed Rabe and escorted him out of his apartment and into the back of the police cruiser. Deputy Allen testified that once he came into contact with Rabe in order to handcuff him, he could smell the odor of alcohol coming from Rabe's breath. Deputy Allen also testified that he and another officer had to physically assist Rabe in walking because Rabe was so unsteady on his feet and they were afraid that he "was going to topple over" if they did not assist his walking.

{¶ 65} The state also presented the testimony of Trooper Untied who relayed how he had investigated the scene of the accident, and was told by the drivers and witnesses that a white work van with ladders attached to the top had caused the accident and fled the scene. Trooper Untied testified that once he investigated the scene of the accident, he went to the apartment complex. There, he observed the white work van that belonged to Rabe, and saw that it had extensive damage to the rear passenger area consistent with what the witnesses to the accident described. Trooper Untied testified that other officers gave him information about the investigation, including a statement from Rabe's girlfriend that Rabe had only

arrived at the apartment moments before Deputy Allen knocked on the door and that Rabe had been the driver of the van that day.

{¶ 66} Trooper Untied then testified about speaking with Rabe, and asking him questions. Trooper Untied testified that he immediately detected "a strong odor of an alcoholic beverage coming from inside the cruiser," that Rabe's eyes were "very bloodshot and glassy," and that Rabe slurred his speech. Trooper Untied further testified about administering the field sobriety tests, and indicated to the jury his belief that Rabe was "absolutely under the influence" based upon his interaction with Rabe and the results of the tests.

{¶ 67} Near the conclusion of Trooper Untied's direct examination, the state played the video of Trooper Untied's interaction with Rabe during which time the field sobriety tests were conducted. Rabe can be seen in the video, having difficulty performing the tests, and Trooper Untied can be heard speaking into his microphone and indicating every time that Rabe fails to perform the tests in an unimpaired manner. Trooper Untied then testified regarding Rabe's refusal to submit to the portable breath test, and also testified that he was informed during his conversation with Rabe that Rabe's license had been suspended because of a previous OVI conviction.

{¶ 68} After viewing the foregoing evidence in a light most favorable to the prosecution, we find that the jury could have found the essential elements of the crimes proven beyond a reasonable doubt. Therefore, the jury did not create a manifest miscarriage of justice through its guilty verdicts, and the evidence did not weigh heavily in favor of acquittal. As such, Rabe's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence, and his fourth assignment of error is overruled.

{¶ 69} Assignment of Error No. 5:

{¶ 70} THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPROPERLY

SENTENCING APPELLANT.

{¶ 71} Rabe argues in his final assignment of error that the trial court's sentence was improper.

{¶ 72} Rabe first argues that the trial court erred in ordering him to pay restitution because it did not consider his present and future ability to pay the sanction.

{¶ 73} According to R.C. 2929.18(A)(1), a trial court may sentence the defendant to a financial sanction as part of the defendant's felony sentence. "Before imposing a financial sanction under section 2929.18 of the Revised Code * * * the court shall consider the offender's present and future ability to pay the amount of the sanction or fine." R.C. 2929.19(B)(5).

{¶ 74} "Although preferable for appellate review, a trial court need not explicitly state in its judgment entry that it considered a defendant's ability to pay a financial sanction. Rather, courts look to the totality of the record to see if this requirement has been satisfied." *State v. Dehner*, 12th Dist. Clermont No. CA2012-12-090, 2013-Ohio-3576, ¶ 47, quoting *State v. Henderson*, 4th Dist. Vinton No. 07CA659, 2008-Ohio-2063, ¶ 7. There are no express factors that must be considered or specific findings made regarding the offender's ability to pay. *State v. Dandridge*, 12th Dist. Butler No. CA2003-12-330, 2005-Ohio-1077, ¶ 6. R.C. 2929.19(B)(5) requires only that the trial court *consider* the offender's present or future ability to pay. *Id.* citing *State v. Martin*, 140 Ohio App.3d 326, 327 (4th Dist.2000).

{¶ 75} During sentencing, the trial court discussed the restitution to be paid to each victim, and did so having considered whether or not Rabe had the present or future ability to pay. The record indicates that the trial court abided by the statutory requirement to consider Rabe's present and future ability to pay because the trial court specifically stated its belief that when Rabe is released from prison he would be able to obtain employment. This statement is indicative of the trial court's reasoning that while Rabe may not have the present

ability to pay as an incarcerated inmate, Rabe would have the future ability to pay the sanction because he would be able to obtain employment at that time. Therefore, the record indicates that the trial court fulfilled its statutory obligation before sentencing Rabe to a financial sanction.

**{¶ 76}** Rabe next argues that his sentence was improper because the trial court imposed its sentence without first considering the purposes and principles of sentencing or any of the factors set forth in the sentencing statute.

**{¶ 77}** "The standard of review set forth in R.C. 2953.08(G)(2) shall govern all felony sentences." *State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6, quoting *State v. A.H.*, 8th Dist. Cuyahoga No. 98622, 2013-Ohio-2525, ¶ 7. As pertinent to this case, an appellate court will only reverse a felony sentence if the court "clearly and convincingly finds" that the trial court's sentence is contrary to law. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 43.

**{¶ 78}** A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, and sentences appellant within the permissible statutory range. *Crawford* at ¶ 9; *State v. Elliott*, 12th Dist. Clermont No. CA2009-03-020, 2009-Ohio-5926, ¶ 10.

**{¶ 79}** Despite Rabe's arguments, the record demonstrates that the trial court considered the statutory factors and sentenced Rabe within the permissible statutory range. During the sentencing hearing, the trial court expressly noted that it had considered the "purposes and principles of sentencing under 2929.11 and .12," and began to discuss how those factors related to Rabe and to the circumstances of the case. The trial court noted that Rabe was a repeat offender and had a previous OVI in the past, and that he showed little concern for the victims or remorse generally. The court also noted that the circumstances surrounding the crash were disturbing and required a prison sentence. Additionally, the trial

court's judgment entry of sentence specifically states that it had reviewed "and considered the purposes and principles of sentencing under R.C. 2929.11 and 2929.12 * * *."

{¶ 80} After reviewing the record, the trial court properly considered the statutory requirements before sentencing Rabe as it did. Therefore, Rabe's final assignment of error is overruled.

{¶ 81} Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.